The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Amy C. Lannard presiding. Good morning. The court is taking up case number 424-0080. And with that, counsel for the appellant, if you'd please state your name for the record. Christopher Goral, G-O-R-I-L. Thank you. And counsel for the appellate? Morgan Hawkeiser, H-O-C-H-E-I-S-E-R for appellate. Thank you. Mr. Goral, you may begin when you're ready. Great. If it may please the court, opposing counsel, a little different on Zoom, I'm sure. I just want to start off, I'm going to make two main points today. First, that the granting of the summary judgment in this case should be reversed. I just believe there is not clear and convincing evidence that the plaintiff intended to deceive the court with her inadvertent nondisclosure of her bankruptcy, of her personal injury case in her bankruptcy proceeding. And then secondly, as I'm sure the panel can see from our briefs, we are conceding that she does lack standing because of the Chapter 13 bankruptcy nondisclosure. It would be a waste of my time, a waste of your time, to argue otherwise given the case law. However, I believe that she should be given a chance to petition the bankruptcy court and have the trustee reopen that bankruptcy, not only to benefit the debtor, Ms. DeLughi, but also to benefit the creditors in her original bankruptcy. If I may ask a question, because it was referenced in the brief as a dismissal with prejudice, but really at the trial court level, wasn't trial counsel simply asking for the ability to file an amended complaint and give that time so when this court is evaluating this, that what we're really determining and what standard we're using is whether or not the trial court properly denied her motion to amend her complaint? Yes, well the decision in the circuit court was purely based off of the judicial estoppel aspect of the case. And while the judge did go on and discuss the standing with reference to the Chapter 13 bankruptcy, it was not decided on that matter and really anything in that opinion, I just looked at as dicta and really just as guiding as to how he would have ruled if he would have found the judicial estoppel was not present. But yes, we were asking to amend. You didn't deny the request for leave to amend, because had that request been granted, it would have given you time to explore whether or not the bankruptcy court would have allowed a motion to reopen. Because at this point, once her case is closed, that's not an automatic, correct? No, it is discretionary with the trustee whether or not to reopen the bankruptcy. I will say that the primary consideration as to the Easley case, I believe, which was cited in the briefs, is with the creditors in mind. And in this case, there obviously is a decent sum of money still owed to the creditors, I think around $40,000 if I'm not mistaken, around that amount. And then further factors that should apply would be to whether it be a benefit to the debtor as well, which in this case, I think it would be an obvious benefit to the debtor if the bankruptcy were reopened. But no, that is not an automatic. You are correct about that. And just for, I guess, clarity as well, with regards to the court did put in its order, though, that it was denying her request to file a second amended complaint. I know you've indicated that the court decided on the judicial estoppel, but the court did make that specific finding not to grant leave to amend, correct? That is correct. And to date, I know it's been framed that she was requesting motion for leave to reopen, but she could have done that without leave from the circuit court. That was between her and the bankruptcy court. When this initially came to light to myself that the personal injury asset was not disclosed in the bankruptcy, and I then advised Ms. DeLuby to notify her bankruptcy attorney and ask that she speak with him regarding talking to the trustee to reopen the case. Her bankruptcy attorney spoke to the trustee who more or less, and this is third person for me, but more or less said that that is not necessary. I am not sure if they appreciated the lack of standing that that provided the appellant in her circuit court case. So to date, she has not filed a motion to reopen in the bankruptcy case. Is that correct? Correct. Right now, there's no motion or petition to reopen the bankruptcy case pending. I do believe that doing that after the summary judgment was granted in this case, I don't think that would be beneficial to Ms. DeLuby. Again, it probably wouldn't be reopened with no case pending. However, I think should this appeal be successful, it obviously conveys a benefit to the appellant to go that route. To the judicial estoppel aspect of the case, there are two standards that need to be applied and need to be met from the defendant. First, the standard for judicial estoppel, clear and convincing evidence of an intent to deceive, and then the fact that this was brought on a summary judgment motion, you need to reach the summary judgment threshold as well with everything taken in the light most beneficial to the appellant. Looking at the factual record, I see really only one direct factual point that could be construed to show that Ms. DeLuby had any knowledge that she needed to disclose the injury that happened a little over a year and a half after she had initially filed her bankruptcy, and that is the Rights and Responsibilities letter that was signed by Ms. DeLuby as a part of her Chapter 13 petition originally filed in April of 2017. Other than that, anything that was pointed to by the appellee, anything that was referenced by the judge, our timeframes, whether or not she hired an attorney, it's all conjecture and it takes a lot of reading into things that I think it is clear any reasonable person could look at one way and another reasonable person could look at it another way. One way to look at it is that Ms. DeLuby suffered a serious traumatic injury and the last thing she's thinking about is a bankruptcy that she filed 550 days ago for which she's been making payment plans. Isn't it correct though that we give deference to the trial court in making those findings and that we're not reweighing the evidence that you're pointing out? I believe that it is a de novo standard of review in the appellate court and I think you need to look at the case as a whole. I think in the Duniver case, the Supreme Court, they mentioned how there is an abuse of discretion standard that should be looked at when reviewing the Seymour framework. However, when that is brought by a motion for summary judgment by that vehicle, then that reverts to a de novo standard and I believe you do need to look at the case as a whole and the evidence as a whole. Thank you. More so, the rights and responsibilities letter and document that was signed by Ms. DeLuby in this case is one line of a 63-page document. It is something that is, from what I understand, is a requirement for 13 bankruptcy in Illinois now as a required local form. Whereas if this is going to be used to evince and to show the intent of Ms. DeLuby as to deceive the court, it nearly amounts to a strict liability standard where everybody who files a bankruptcy and fails to disclose the personal injury case that then is suffered later, it creates a hurdle for the appellant to overcome that is unreasonable. Should the bankruptcy have been disclosed? Yes. Was it not disclosed? Yes. Was that a mistake? That is our position. I think it is clear. Once the summary judgment motion was filed with that rights and responsibilities attached, suggesting that she did have knowledge, what did she set forth before the court in response in her summary judgment motion that was directly attributable to her? I know counsel filed an affidavit, but unlike the Denevere case, she did not file any personal affidavit setting forth her statement that this was a mistake and she did not have this knowledge or intent. That is true. It is my belief that it would have been a completely self-serving affidavit and looked at that way. I think the decision of the circuit court bears that out by referring to both my affidavit that I supplied in the response and the bankruptcy attorney's affidavit that I supplied in the response, labeling them both self-serving affidavits. Counsel, can I ask a question? Of course. From the time notification was provided that this was an issue and the actual hearing on the summary judgment motion, how much time passed? About a year and a half. Maybe a little less. Wouldn't the best evidence of her intent not to perhaps fail to disclose have been to immediately petition the bankruptcy court to reopen? Yes, that would have been a good avenue to go. I will reference the affidavit of the bankruptcy attorney who did mention this to the trustee and she did not indicate a willingness to reopen the case at that time. I'm sorry, go ahead. I will say, which I think is the point you're going to get to, there was no formal petition which would have helped to evince that knowledge or intent. That's exactly my point. Of course, she can't control what the trustee determines or decides to do, what action the trustee takes, but some of the best evidence of her intent to rectify this oversight would be to show that there is a petition pending that they have requested and lay out what has been sworn under oath before the bankruptcy court in the petition to reopen, which could then be essentially her affidavit in your circuit court proceeding. Why wasn't that there? In hindsight, it probably should have been done. More importantly, since it wasn't done, what's the trial court supposed to do? I think that the record that was presented to the trial court, I do think it cast doubt on what her intent was. I think it's important to frame that it was the defendant's burden in that motion. It was their burden of proof to show this intent. The rights and responsibilities letter, I don't believe does that. I believe that everything else that has been done in answering her answers to interrogatories, referencing the bankruptcy in her deposition, answering that she had filed the bankruptcy. No prior follow-ups were done in the deposition regarding the bankruptcy. If I could do really one thing differently at this stage with that deposition, I would have asked in the deposition were you aware? I would have asked it open-ended because I know what she would have said. She would have said, no, I was not aware. Which came first, the cause of action or the bankruptcy? The bankruptcy came first. It was on April 18, 2017. The injury she suffered was on October 13, 2018. I have that as about a little short of 550 days between the two. How many different ways can you interpret notify the attorney if the debtor is sued or wishes to file a lawsuit? I think you can only interpret that one way. Whether you can expect somebody to retain that knowledge after that long of a time period or really think that they're ever going to have to do that. Filing a personal injury case is not something that people expect to do. It's a traumatic event in itself, especially when a brain injury is involved and a serious injury for which the lawsuit was not filed until almost two years later because the plaintiff was still treating throughout that time. She's still treating today. The bankruptcy, her primary concern with her bankruptcy filing from the moment she filed it was to pay her payment plan, make sure she could pay her payment plan and receive her eventual discharge in that case. Any mistake or inadvertence in the disclosure, it was not primary in her mind. It was not top of mind. I wish it had been. Thank you. The cases that were cited in the briefs very briefly. The one case, the Smith case, I don't think that should have any bearing on this panel's decision regarding this case. I think that is one of the cases that shows very egregious deceit and intent. That is intent and deceit in intending to deceive the court. The bankruptcy filed in a different state stating at a deposition in the personal injury lawsuit that there was no schedule in the bankruptcy literally the day after the deposition adding assets and not adding the personal injury case and then amending schedules again and not adding the personal injury case. It is a vastly different situation from the case currently at Barr. And then the Barnes case, slightly less, but the difference is that case was filed after discharge in the bankruptcy case and the court looked at that as a clear intent to deceive and try to wait out the bankruptcy more or less until that plaintiff filed the personal injury case. There is a case, the only case I could find from this district on this issue, again it is a relatively new issue with the recent Seymour case less than 10 years old with this framework that we are using today was an unpublished opinion that I obviously did not want to cite for obvious reasons, but it is the Herbst v. Toys R Us case that was decided by this district. It is a 2015 ILF 150225U. I believe that that case really is most directly on point and for whatever that may be worth, I would ask the panel to look at that for guidance, obviously not precedential. Along with our case, there was no affidavit from the plaintiff in that case. There was no affidavits from the attorneys either, but it shows basically that there is no intent to deceive in there and I think it is most similar to the case that we currently have at Barr. Moving back to the standing issue, there is no standing, but it would be appropriate to give Ms. DeLuby the chance to formally petition the bankruptcy trustee to reopen the case and if that decision is not to reopen the case, then she obviously will not have standing to refile her lawsuit in this case, but for the sake of the debtor and for the creditors and really just to do substantial justice between all the parties, I think that that would be the most appropriate action in this case. Counsel, is there anything further? Otherwise, you will have time in rebuttal. Yes, one last thing with my last few seconds. Ms. DeLuby did petition the bankruptcy court twice, once to modify payments. August 13, 2020, once to modify some technical language in the repayment plan that should not have been included in the first place. Those are the only two times that she really went back into the bankruptcy court. It was not to amend the schedules and I think it is made clear from the Seymour decision that any motion within the bankruptcy court does not show or evince knowledge that the plaintiff knew that a disclosure needed to be made. Thank you for your time. Thank you, Mr. Goral. You will have time in rebuttal. May it please the court and counsel, plaintiff, counsel for appellant has brought up two main issues, those being judicial estoppel and standing. I would like to start with the judicial estoppel argument and really the crux of this is the second prong of the Seymour analysis looking to whether there was deliberate intent to deceive or mislead the bankruptcy court by the appellant's nondisclosure of this lawsuit. There was. It is our argument that there was in the trial court's finding that there was intent to deceive must be affirmed. Appellant counsel has brought up the rights and responsibilities that Ms. DeLughi signed when initially filing for Chapter 13 bankruptcy. The record indicates that Ms. DeLughi signed those rights and responsibilities not once but twice, which would indicate that she had reviewed them not once but twice. As this court knows, those rights and responsibilities require the debtor to contact the attorney immediately if the debtor has a significant change in income, experiences any significant change in financial situation, such as serious illness, marriage, divorce or separation, lottery winnings or an inheritance. The rights and responsibilities executed by Ms. DeLughi also require her to notify the attorney if she is sued or if she wishes to file a lawsuit. And that goes to the desire to file a lawsuit not after the lawsuit has been filed. Those rights and responsibilities also very clearly lay out, which the trial court in its opinion referenced, that the burden is on the debtors to make a true and accurate disclosure of the financial situation and they have a responsibility to contact their attorney if that changes. Ms. DeLughi never contacted her attorney. And as Justice Armand pointed out, Ms. DeLughi did nothing during the pendency of her bankruptcy or even after her bankruptcy was discharged until summary judgment was filed and she couldn't even be bothered to file an affidavit stating that she did not intend to deceive the bankruptcy court. We've already established that the prongs of judicial estoppel, the first prong of judicial estoppel has been met. Plaintiff has conceded that. She's conceded that she conferred a benefit, that she took these two different positions. And despite plaintiff's argument, there is sufficient evidence that she intended to deceive the bankruptcy court. As mentioned, she did not only fail to disclose her injuries to the bankruptcy court, which she knew of at the time of the alleged fall in October of 2018. Although this was after the date that she filed her petition for Chapter 13 bankruptcy, she knew at that time that she needed to disclose lawsuits. She signed those rights and responsibilities. She disclosed lawsuits against her and judgments against her in her petition for Chapter 13 bankruptcy. There is no affirmative notions from the plaintiff that she did not know this, that she was not told about these rights and responsibilities, that she did not execute these rights and responsibilities. In fact, the opposites occurred. Plaintiff has, excuse me, appellant has conceded that she signed these rights and responsibilities. Counsel, if I may, certainly the bankruptcy court strictly construes those assertions contained within those rights and responsibilities and requires the debtor to provide all information with regards to assets even after the filing of the Chapter 13 during the pendency of the plan. But when we look at the evidence before the trial court, appellant suggests that the language in the rights and responsibilities, if you will, is boilerplate and that perhaps it is a lower standard or threshold, or if we want to look at it, I guess maybe I should phrase it, a higher standard that we must have some affirmative intent to deceive beyond this boilerplate language. What other evidence in the record supports your contention that there was this intention to deceive or mislead other than what I will say these general requirements of her to report any assets to the bankruptcy court? What else is in this record before the circuit court? Of course. So looking past those rights and responsibilities, which we believe to be paramount, her signing those rights and responsibilities, we believe to be direct proof of that intent to deceive. But looking past that, the appellant knew at the time of the incident, days after the incident, that she had a claim for damages. The evidence in the record shows that she contacted Appley's insurer seeking I don't want to call it a settlement, but seeking repayment for future medical bills for her injury. She knew at that time that she had a claim and she at no point contacted the bankruptcy court or council. She also hired three attorneys knowing that she had a claim. And all of this occurred while the bankruptcy was still open. One cannot look at these actions and show and see that they are mistake or an advertency. She knew she had a claim for more than $50,000 well before discharging bankruptcy. And additionally, she knew that changes in her finances or her financial situation needed to be addressed to the bankruptcy council. That is evidenced by her modification in September of 2020. While the modification in and of itself is found not to be evidence of intent to deceive, the appellant knew at that time that she had a change in her financial circumstances not related to this lawsuit. So why didn't she advise the bankruptcy court at that time of her injuries, of her allegedly significant medical bills? Upwards of $200,000 have been claimed in this lawsuit. She did not advise her bankruptcy council at that point, but she did advise them that she needed additional time, 13 months, to repay her plan. And so even beyond those rights and responsibilities, the plaintiff's actions within the bankruptcy, her activeness in the bankruptcy, her knowledge that she needed to speak to the bankruptcy council when there was a change in circumstances do evidence that intent to deceive. The only time that the plaintiff claimed that she didn't know she needed to disclose such things were after the appellee filed for summary judgment in the underlying lawsuit. And as mentioned at that time, Mr. Lubey and until this point, Mr. Lubey could not have been bothered to execute an affidavit on her own. The affidavit came from counsel for appellant and it was not verified by the plaintiff herself. She did not execute an affidavit and what she stated in what counsel for appellant stated in the affidavit is absolutely contradicted by the documents that the plaintiff signed under oath. So we have a hearsay statement from appellant's counsel stating that Mr. Lubey further advised that she did not know she was obligated to disclose the case. Mr. Lubey has never affirmed that. And in fact, she affirmed under oath those rights and responsibilities that she needed to disclose potential lawsuits and changes in financial situations. There are zero affirmative statements which indicate that Mr. Lubey was confused, was mistaken, or in any way attempting to deny this intent to deceive or mislead the bankruptcy court. I dare say it would be easy for counsel for the appellant to obtain an affidavit from Mr. Lubey stating that she did not have that intent to deceive. The case law that is out there and specifically looking to Smith as brought up by counsel for appellant is the reason that we need judicial estoppel. There, the debtor disclosed two lawsuits against him but did not disclose one that he filed. He did not claim that he was confused. And in fact, he very specifically told the bankruptcy court that he did not have any pending lawsuits. We concede that Smith is a gregarious showing of intent to deceive. But the same thing is happening here. Ms. DeLuge has not claimed that she is confused. She has not claimed she has no intent to deceive. And she has had every opportunity to properly file and correct her bankruptcy petition and has not. There have been years since this incident. The incident occurred in 2018, October 2018, and we are coming up on six years from the time of the incident. Though the bankruptcy case was closed in 2022 and the debts were discharged in 2022, that's still four years of time where Ms. DeLuge did nothing. She had every opportunity to advise the bankruptcy court, the trustee, even attempt to reopen the bankruptcy as counsel for the appellant is requesting to do now several years after the bankruptcy has been discharged and only after Ms. DeLuge got caught having two separate positions and having her lawsuit dismissed with prejudice. Appellant has suggested with regards to the judicial estoppel issue that the standard of review, because it was a grant of a summary judgment motion, would be de novo. Do you agree with that? We do. Because it was brought on a summary judgment, we believe that de novo is the proper standard. However, the Dunover case, which has been cited in the briefs, did have an abuse of discretion standard. And we believe that that either would be applicable and abuse of discretion would be more appropriate. However, we do not dispute that the de novo standard would also be appropriate due to the summary judgment pleadings. And with regards to the standard of review as it relates to the filing issue, my questioning of appellant, while there has been much reference to dismissal with or without prejudice, it really appeared in reviewing the record and with regards to the order that what the plaintiff had really been asking for was leave to amend and so that this court would really be evaluating whether the trial court erred in granting her request for leave to amend her complaint. First, do you agree with that? I do agree that that is the appellant's request. And with regards to that standard, do you have a position with regards to what the applicable standard of review would be with regard to the request to amend? I believe that that would also be a de novo standard based on the case law and based on the briefs. We did not dispute the standard of review in our briefs. Thank you. And turning to standing, plaintiff, or excuse me, appellant is now trying to have a second bite at the apple. Again, this request has only come after summary judgment has been filed and more importantly, after summary judgment has been granted in favor of defendant appellee. Moreover, the petition to reopen the bankruptcy as this court knows is a question for the bankruptcy judge. There's no clarity whether the bankruptcy will be reopened. And during appellant's argument, he noted that it would be a benefit to Ms. DeLuge, but she's had every opportunity to do this. At no point after the discharge of her bankruptcy has she requested it to be reopened. Again, now only after she's been caught, she is requesting to reopen the bankruptcy. And she's already conceded that she did not have standing to bring the instant lawsuit at all. Counsel for appellant brought up the bankruptcy attorney, conversations that he had with the bankruptcy attorney. These are third party statements that the bankruptcy court had, or excuse me, the bankruptcy counsel had with the trustee. There's no evidence in the record that the trustee had even thought about reopening this case. We don't know what the trustee would do because Ms. DeLuge has not gone forth and filed that petition to reopen. Plaintiff's appellant's request for leave to file an amended complaint is too far gone at this point. She could have filed an amended complaint and replaced the plaintiff with the trustee at the time that she filed an amended complaint in this lawsuit. She filed her initial complaint in September of 2020 and then ultimately filed an amended complaint on June 15, 2021. Counsel for appellant knew that they could file an amended complaint. They sought leave to file an amended complaint and filed an amended complaint already. They did not properly replace the plaintiff with the trustee or even seek to determine whether the trustee wanted to be the plaintiff in this case and recover the damages for the estate. The intent to deceive and standing arguments and requests for leave to amend the complaint all come down to the plaintiff not doing anything. She did nothing when she had an incident. She did nothing when she sought recovery from that incident. She did nothing once she learned that she needed to disclose this information. All she did was contact the bankruptcy attorney and the record shows that was one month after she had a conversation with Mr. Goral about the need to disclose. She has not affirmed that she was mistaken, that she was confused like the case law we have shows. She has not affirmed that she was in any way denied that she had denied the intent to deceive. She simply sat there doing nothing and now is requesting a benefit from her failure to disclose, from her violation of the rights and from her decision to sit and do nothing. She has advised the bankruptcy court that she had no third-party claims and then filed a lawsuit against my client. She has conceded that judicial estoppel has been met and she has clearly and convincingly intended to deceive the bankruptcy court. Upon questioning, counsel for appellant said that he wished he did this back in the day, back when he learned of the bankruptcy, but he didn't do anything. He advised his client to talk to the bankruptcy attorney. We can't go back now and allow Ms. DeLughi to attempt to reopen the bankruptcy when she is clearly and convincingly intended to deceive that court. She had every opportunity to properly file and correct her bankruptcy petition and plan and yet she did not. Based on this argument and the briefs that we laid out, we do believe that there is clear and convincing evidence that Ms. DeLughi intended to deceive the bankruptcy court and we believe that the trial court's ruling should be affirmed. Thank you very much for your time and consideration. Thank you, counsel. Mr. Goral, Roberta? Sure. Going to the standard of review for the standing issue and what the actual ruling was in the circuit court, looking at the decision, it is contemplated that there would be a dismissal, that there could be a dismissal without prejudice on that issue and then the Honorable Judge Barch stated, based upon the court's ruling on defendant's judicial estoppel argument, however, plaintiffs request for time to reopen the bankruptcy case and thereafter pursue relief under a second amended complaint is denied. So, I do think that the two issues are inextricably intertwined both in their substance and in the lower court's ruling. The counsel for the appellee stated that the rights and responsibility letter shows directly the intent to deceive in this case. That is not true. The only thing that the plaintiff signing the rights and responsibility letter directly shows is that she signed that document. It does not go to what her intent was over a year and a half later when she got injured and did not petition the court to amend her schedules at that time. You can take circumstantial evidence and come to whatever decision you believe that shows in Ms. Diluby's mind, but it unequivocally does not show the mere fact that she signed that document in intent to deceive. At the very best, it shows that at one time she read that document and those lines back in April of 2017 and that she knew at one time that this was her obligation would be to disclose future lawsuits that she may have. That is the best possible reading you can give that for the appellees. It shows nothing more than that. Since this isn't a criminal proceeding, in this instance, her failure to file an affidavit, couldn't that be something the court can use against her? You could. I also don't think that the absence of an affidavit is as damning as it has been made out to be by either the defendant or the court. I do think that it was their burden to show intent. I don't think they've shown any intent. Everything that they mentioned absent this rights and responsibilities letter that all we know is that it was signed by Ms. DeLube. We don't know if she even read the rights and responsibilities letter. I understand that when she signed something, we're presuming that she read it and understood it, but we don't have any direct proof of anything other than that she put pen to paper on that document. I also know that she knew she had a cause of action. She has petitioned to amend or she's amended her schedules, so she knows how that process goes. To me, the glaring omission is that she does nothing during the interim period and doesn't submit an affidavit in any way refuting the claim that she's been trying to do this deceptively. There is not an affidavit. I agree. I also agree that given the case law, the absence of an affidavit has not been used to impute knowledge onto the plaintiff in those cases or in the cases that we've cited and gone over in the briefs. I don't think it's appropriate to do that in this instance either. You mentioned the modifying of the schedule, which was done by Mr. Lutie in this case. Again, looking at the Seymour decision, the Supreme Court in that case decided that that does nothing to show intent on behalf of the plaintiff either. I'm sorry. It was probably a poorly worded example. My point was simply that she knew the process. I think I was just really trying to do a nice segue based off that as well. I think we're on the same page as far as that goes. Go ahead. I'm sorry. I got a notification that my time is up. Do I have a little more time? I believe that your time has now concluded, counsel. Okay. Thank you very much. Thank you. This court will take this matter under advisement and this court stands in recess.